---

No. 21-1700

---

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

TAWANDA HALL, et al.,

     Plaintiffs-Appellants,

v.

ANDREW MEISNER,
Oakland County Treasurer
in his official capacity, et al.,

     Defendants-Appellees.

---

Appeal from the United States District Court
Eastern District of Michigan
Honorable Paul D. Borman, District Judge

---

## MICHIGAN DEPARTMENT OF ATTORNEY GENERAL'S MOTION TO INTERVENE UNDER FEDERAL RULE OF APPELLATE PROCEDURE 44(b) AND 28 U.S.C. § 2403(B)

---

Matthew B. Hodges (P72193)
Assistant Attorney General
Attorney for Intervenor-Appellee
Michigan Dep't of Attorney General
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7584

Dated: September 8, 2022

Pursuant to Fed. R. App. P. 44(b) and 28 U.S.C. § 2403(b), the Michigan Department of Attorney General seeks to intervene in the pending appeal because: (1) the constitutionality of Mich. Comp. Laws § 211.78 *et seq.* has been drawn into question and notice of this challenge is required under the Federal Rules of Civil Procedure, Federal Rules of Appellate Procedure, and the U.S. Code, which empower the State of Michigan to intervene by right; (2) this Court should either abstain from these claims predicated on issues of state law, for which there are other cases raising the same basic claims currently pending in state courts or alternatively, this Court should certify the state law claims to the Michigan Supreme Court; and (3) this Court must consider the defense of the Tax Injunction Act, which may serve as a complete bar to Plaintiffs' claims.

## STATEMENT OF ISSUES PRESENTED

1.    Whether this Court should grant the Department of Attorney General's motion to intervene under Fed. R. App. P. 44(b) and 28 U.S.C. § 2403(b).

2.    Whether this Court should abstain or certify the constitutional questions of state law to the Michigan Supreme Court.

3.    Whether the Tax Injunction Act bars Plaintiffs' claims.

## INTRODUCTION

The cost at issue to the county in this case is significant and combined with similar cases advancing through state and federal courts, the threat to the public fisc is profound.  The claims are based on a challenge to the constitutionality of Michigan's property tax foreclosure and sale process under Michigan's General Property Tax Act, Mich. Comp. Laws § 211.78 *et seq*.  This law applies statewide; there may be only one county defendant, but there are 82 others operating under the same state law.  A holding declaring this law unconstitutional will impact every county that took similar collection action under this tax law.  The questions before this Court depend on state property and tax laws and should be decided first by the State's courts.  There are multiple cases pending in state trial and appellate courts raising this issue.

Defendant Oakland County, as the foreclosing governmental unit, applied Mich. Comp. Laws § 211.78m—the statutory right of first refusal—after Plaintiffs (1) failed to pay their property taxes to the local government, (2) once delinquent, failed to pay the taxes to the county, and (3) failed to seek relief from the state's circuit court, resulting in

foreclosure and sale. Plaintiffs allege Oakland County's actions gave rise to multiple constitutional violations when they sold foreclosed properties for the tax owed under Mich. Comp. Laws § 211.78m.

In short, when the county foreclosed for unpaid property taxes and sold the properties to a municipal entity under a statutory right of first refusal for the aggregate back taxes, the law did not provide for any sale proceeds above the taxes and collection expenses, which Plaintiffs assert deprived them of just compensation through extinguishment of their equity in the property. That is a facial challenge to the state's prior tax law, Mich. Comp. Laws § 211.78m.

Yet, Plaintiffs failed to notify the State of Michigan about this constitutional challenge to the state's tax law, either in the district court, *see* Fed. R. Civ. P. 5.1, or in this Court, *see* Fed. R. App. P. 44(b). The Department of Attorney General became aware of the nature of Plaintiffs' claims after oral argument in this Court held on July 20, 2022. The Department moves to intervene for the purpose of addressing the constitutionality of Mich. Comp. Laws § 211.78m, noting that this case turns on *what* property rights exist under state laws and

how the state's property tax collection laws operate, which are questions that should be decided by the state courts first.

This Court should grant the motion to intervene, and either set a new briefing schedule or remand the case to the district court to enable the State to raise a defense to the claims under the Tax Injunction Act. The State also asks that this Court abstain, allowing the State's courts to first address these questions in the multiple actions that are pending raising the same claim, or for certification of the state law issues to the Michigan Supreme Court.

## STATEMENT OF THE CASE

The State is not a named defendant; it was not the Foreclosing Governmental Unit (FGU) in Oakland County and did not sell or purchase the properties after foreclosure. The Defendant is a Michigan county that acted as FGU through its county treasurer, named a Defendant in his official capacity, acting under state tax laws.

### A.    District Court Proceedings

Tawanda Hall and seven other named Plaintiffs filed a seven-count putative class action lawsuit against 13 defendants, alleging

various state and federal constitutional violations stemming from the tax foreclosure and sale process found at Mich. Comp. Laws § 211.78 *et seq.*, and specifically the operation of Mich. Comp. Laws § 211.78m providing for disposition of tax-foreclosed properties.

Plaintiffs previously held fee title to real property located in the City of Southfield, Michigan. Defendant Oakland County Treasurer (County Treasurer), foreclosed on each property for failure to pay property taxes. Pursuant to Mich. Comp. Laws § 211.78k(6), the judgment of foreclosure vested fee simple title to each property in the County Treasurer. Under Mich. Comp. Laws § 211.78m(1), the County Treasurer then sold each property to the City of Southfield for the total amount of the delinquent property taxes, fees, penalties, interest, and related collection expenses, under the City's statutory right of first refusal. *See* prior version Mich. Comp. Laws § 211.78m(16)(c) (defining minimum bid). None of these sales resulted in any proceeds above the amount of the total tax delinquency and collection costs.

The District Court summarized the General Property Tax Act, Michigan's property tax statute, as it applies to this case:

> The [state tax law] permits the recovery of unpaid real-property taxes, penalties, interest, and fees through the

foreclosure and sale of the property on which there is a tax delinquency. *See* Mich. Comp. Laws § 211.1 *et seq.* Under the Act, the county treasurer may elect to act as the collection agent for the municipality where the property is located when taxpayers become delinquent on their property taxes. Mich. Comp. Laws § 211.78(8). After three years of delinquency, multiple notices and various hearings, tax-delinquent properties are forfeited to the county treasurer; foreclosed on after a judicial foreclosure hearing by the circuit court, and title to the forfeited property is transferred to the county treasurer; and, if the property is not timely redeemed by March 31 of that year, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. Mich. Comp. Laws § 211.78 *et seq.* As the Act applied during the time periods relevant to this action, after foreclosure, the property is then disposed of as follows:

> (1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest and other costs (the "minimum bid"); or

> (2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction in July and, if not sold, again in October.

Mich. Comp. Laws § 211.78m.

*Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at *2 (E.D. Mich. May 21, 2021) (footnote omitted).

The District Court dismissed the entire case with prejudice and entered a judgment in favor of all defendants on October 4, 2021. This appeal followed.

6

**B.     Appellate Proceedings**

Briefing concluded on May 4, 2022, and oral arguments were heard on July 20, 2022.  The Michigan Department of Attorney General learned about the nature of the claims raised in this case after oral argument was completed.  The Department was not provided notice under Fed. R. App. P. 44(b), or under Fed. R. Civ. P. 5.1 in district court, that the constitutionality of a Michigan law was in question.

**C.     Department of Attorney General Involvement**

The Michigan Department of Attorney General has been notified of other cases raising similar, yet distinct, constitutional challenges to the state's tax foreclosure laws filed in other federal courts.  The Attorney General's requests to intervene in those cases, for the limited purpose of addressing the constitutionality of Mich. Comp. Laws § 211.78 *et seq*, have all been granted thus far.  *See e.g.*, *Freed v. Thomas*, No. 1:17-cv-13519 (E.D. Mich.); *Freed v. Thomas*, Nos. 21-1248, 21-1288, and 21-1339 (6th Cir.); *Fox v. County of Saginaw*, No. 1:19-cv-11887 (E.D. Mich.); *Sattler v. County of Kent*, No. 1:22-cv-00316 (W.D. Mich.).

## SUMMARY OF ARGUMENT

The Michigan Department of Attorney General should be allowed to intervene to defend the constitutionality of state law as: (1) Plaintiffs are challenging the constitutionality of Mich. Comp. Laws § 211.78m, and notice of a constitutional question is required under the federal rules and U.S. Code, which empower the State to intervene by right; (2) this Court should abstain or the state law questions should be certified to the Michigan Supreme Court; and (3) the Tax Injunction Act applies to tax collection, barring Plaintiffs' claims.

## ARGUMENT

### I.    The State of Michigan was not given notice under Fed. R. Civ. P. 5.1 or Fed. R. App. P. 44(b) or 28 U.S.C. § 2403(b).

Plaintiffs' claims amount to a facial challenge to Mich. Comp. Laws § 211.78m.  The claims are based on Oakland County, as the FGU, and its actions, which according to Plaintiffs, resulted in constitutional injuries when Mich. Comp. Laws § 211.78m(1) was applied as written.  "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).

Plaintiffs aver that the right of first refusal provision found in Mich. Comp. Laws § 211.78m, which allows certain governmental entities to purchase foreclosed properties for the aggregate delinquent taxes and collection costs, is unconstitutional as it effectuates a taking of "equity" without providing compensation.  (Pls' Br, R. 46, p. 21) ("The government effected an unconstitutional taking").  That is: if "Michigan [law] does not recognize a 'property interest' in the alleged lost equity," as the district court held (Pls' Br, R. 46, p. 32), then the state's law [not some misapplication of the law by the Defendants] does not square with an alleged "common law" right "to be paid for the equity value of property seized to pay their debt."  (*Id.* at 38.)  Thus, that provision of the law and the *absence* of any provision recognizing a property right in equity and compensating for that lost right, present a constitutional challenge to the state's law.

When the constitutionality of a Michigan statute is questioned in federal court, the State has a right to defend that statute–and that right begins with proper notice.  First, 28 U.S.C. § 2403(b) mandates that federal courts "shall permit the State to intervene" in any suit "wherein the constitutionality of any statute of that State affecting the

public interest is drawn in question." Courts and litigants are obligated to notify the appropriate state's Attorney General when the proceedings call into question the constitutionality of a state law.

Second, under Fed. R. Civ. P. 5.1(b), "[t]he court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." The failure to certify a question to the appropriate state's attorney general, even when a court rejects a constitutional challenge, is a "technical violation" of 28 U.S.C. § 2403. *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). *See also Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir.1985) ("Certification is . . . a duty of the court that should not be ignored"). Plaintiffs failed to provide this prompt notice in the district court.

Finally, under Federal Rules of Appellate Procedure, the burden remains on a party to notify the circuit court clerk, so that the clerk can notify the state Attorney General. *See* Fed. R. App. P. 44(b). Plaintiffs did not provide written notice to the circuit clerk, and thus the Michigan Department of Attorney General was not notified of the constitutional question. The alleged constitutional violation is based on the straight-forward application of the State's tax statute.

10

Significantly, certification can take place at any time. *Wallach v. Lieberman,* 366 F.2d 254, 258 (2d Cir. 1966). A court may allow the attorney general to intervene on appeal. *Merrill,* 763 F.2d at 82. In *Oklahoma ex rel. Edmondson v. Pope*, the Tenth Circuit found that a remand to the trial court was appropriate. 516 F.3d 1214, 1216 (10th Cir. 2008). In other instances, this Court has invited additional briefing from the State, and thus the opportunity to participate, by the State's attorney general. *See, e.g.*, *United States v. Davis*, 326 F. App'x 351, 353 n.2 (6th Cir. 2009) (after withdrawing earlier opinion); *id.* at R. 49 (letter from the Sixth Circuit clerk to Department of Attorney General inviting the State to address the constitutionality of a Michigan statute whose constitutionality had been drawn in question).

Notification would not have been a meaningless ritual here. The Department of Attorney General has intervened in four other related tax cases after receiving the proper notification. *See* Statement of Case, Section C, above.

This case addresses a specific factual scenario, under state tax and property laws, that has not yet been resolved by the State's courts, which should be given the opportunity to decide how the State's laws

apply.  State court review is not merely hypothetical; there are at least four pending cases in state trial or appellate courts addressing what property right exists under Michigan laws, if any, when a property is foreclosed for unpaid taxes and transferred for the aggregate debt amount, producing no surplus of proceeds, and if there is such a property right, how is the right measured.  These, and possibly other related state law questions must be resolved before reaching the federal question of whether Plaintiffs are entitled to some enforcement device.

## II.    This Court should abstain from deciding these unsettled state law questions or, alternatively, this Court should certify the state law questions to the Michigan Supreme Court.

Property rights are determined by state law.  *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165 (1998).  The Michigan Supreme Court has held that "when property is taken to satisfy an unpaid tax debt, just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property—no more,

no less." *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 466 (Mich. 2020).

An "equity" claim was raised and rejected in *Rafaeli*. *Id.* at 483. ("We reject the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all."). That is because "just compensation is measured by the value of the property *taken*," and under state law, "the property improperly taken was the surplus proceeds, not plaintiffs' real properties." *Id. Rafaeli* held that the state tax law's provision that deprived all access to realized surplus sale funds—and that can only happen when the sale price of the property exceeds the amount of back taxes and collection costs owed—precluded former interest holders from seeking surplus money actually realized by the government via sale, making the law unconstitutional. *Id.* at 462.

So, while *Rafaeli* rejected the "equity" argument, holding that the property right taken was one in the same as the money left over after sale net of tax debts, *Rafaeli* did not involve right of first refusal sales; the *Rafaeli* properties were sold at auction. *Id.* "Among the cases that

call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law." *Harris Cnty Comm'rs Ct. v Moore*, 420 U.S. 77, 84 (1975).

The State's courts should be allowed to determine the meaning and reach of its own prior decisions, like *Rafaeli*, and its own laws, especially state property and tax laws. *See, e.g., United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Mich.*, 910 F.2d 343, 349 (6th Cir. 1990) (holding that "proceedings" which "implicate property rights . . . have traditionally been measured in terms of state law."). In analogous situations, this Court has "decline[d] to formulate a uniform federal [property right]," instead deeming it "appropriate to refer to state law in determining the nature of the property interest claimed" before determining how that right is recognized under federal laws. *Id.*

That is because state property laws "implement policies and values lying within the traditional domain of the State." *Boggs v. Boggs*, 520 U.S. 833, 840 (1997). That is, "property rights have traditionally been, and to a large degree are still, defined in substantial

14

part by state law." *Columbia Gas Transmission Corp v. Exclusive Nat.*
*Gas Storage Easement*, 962 F.2d 1192, 1198 (6th Cir. 1992). Thus,
when a federal court's decision on a federal constitutional question will
"invariably derive its essence and much of its practical import from how
the parties' property rights have been carved out under state law and
how the parties have previously allocated these state-defined property
rights," federal courts should apply existing state property law. *Id.* But
here, the state law questions are not yet settled. *See, e.g.*, *Rafaeli*, 952
N.W.2d at 462 ("[A] former property owner has a compensable taking
claim if and only if the tax-foreclosure sale produces a surplus."). This
Court should either abstain from this claim or certify the underlying
state law claim to the Michigan Supreme Court.

### A.    This Court should abstain from the state law question here.

Abstention is rooted in federalism and is particularly applicable
when matters of great importance to state jurisprudence are raised as
constitutional challenges to state law in federal courts.

Relevant here, *"Pullman* abstention is built upon the traditional
avoidance of unnecessary constitutional decisions and the sovereign

respect due to state courts." *Gottfried v. Med. Plan. Services, Inc.*, 142 F.3d 326, 331 (6th Cir. 1998) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500–01 (1941)).  The doctrine applies to "difficult and unsettled questions of state law," which state-law questions "must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). These important questions of state property rights and proper application of state tax collection statutes have not yet been resolved by Michigan's state courts.

When a matter raised in federal court could be resolved in a state court, and it is a question of state law, the *Pullman* doctrine applies. Indeed, "the classic reason to apply the *Pullman* abstention doctrine is where the remanded state-law question is an independent and unsettled issue," separate from the federal question, and thus a matter "best decided by the state courts." *Anderson v. Charter Tp of Ypsilanti*, 266 F.3d 487, 491 (6th Cir. 2001) (citing *Harris Cnty. Comm'rs Ct. v. Moore,* 420 U.S. 77, 83–84 (1974)).

In another Michigan tax foreclosure and sale case, the U.S. District Court for the Eastern District of Michigan abstained from

addressing the constitutionality of recent legislative changes to property tax law until the State's courts decide the issue. *See Fox v. Cnty. of Saginaw by Bd. of Comm'rs*, 2022 WL 944284, at \*8 (E.D. Mich. March 29, 2022). The *Fox* court recognized that the federal claim turned on matters of state taxation and property laws, and "[a]ccording to the Sixth Circuit, *Pullman* abstention is appropriate when a federal court is confronted with 'an unsettled state-law question [that] is best decided by or already pending in state courts.' *Hill v. Snyder*, 900 F.3d 260, 265 (6th Cir. 2018) (citing *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975))." *Fox*, 2022 WL 944284, at \*4.

State courts are poised to answer these questions. There are at least two cases in the Michigan Court of Appeals addressing this statutory provision. *See Jackson v. Southfield Neighborhood Revitalization Initiative* (Mich. Ct. App. No. 361397);[1] see also *Mettler*

---

[1] The Docketing Statement by appellant in *Jackson* identified the issues as:

> The original action was for an unlawful taking under the Michigan Constitution and 5th Amendment of the U.S. Constitution, as well as…Defendants [Southfield Neighborhood Revitalization Initiative] acquiring over 150 properties . . . under MCL 211.78m . . . [which state law was] subsequently . . . amended . . . and required a

*Walloon LLC v Charlevoix County Treasurer* (Mich. Ct. App No. 362484).[2]  The same issue was also raised in *Sangster v. County of Wayne*, 20-005048-CZ (Wayne Cty. Cir. Ct.) and in *Purnell v. Wayne County*, 20-009074 (Wayne Cty. Cir. Ct.), both pending in a Michigan trial court.  This Court should abstain, allowing these novel state law questions to be resolved by the state's courts, first.

---

> city . . . exercising the right of first refusal to pay fair market value.

Exhibit 1, Docketing Statement for *Jackson* (COA No. 361397).

[2] The Docketing Statement by the appellant in *Mettler Walloon* identified that same basic issue:

> Appellant owned property in Melrose Township.  The Charlevoix County Treasurer obtained title to this property because of the Appellant's failure to pay property taxes.  Melrose Township then purchased the property for the "minimum bid," which was approximately $9,000.  The fair market value of the property at that time as determined by the Melrose Township Assessor was approximately $190,000.  Appellant claimed in the lower court that the sale of the property for the "minimum bid" was a taking and that the proper remedy for the taking would be to require the sale of the property at a public auction.

Exhibit 2, Docketing Statement for *Mettler Walloon* (COA No. 362484).

**B.    Alternatively, this Court should certify the predicate state law issue to the Michigan Supreme Court.**

Abstention requires waiting for litigation to reach finality at the state court level.  But a federal court may instead certify a question to the Michigan Supreme Court under Mich. Ct. Rule 7.308(A)(2).  Federal courts have recognized this practice as one that reduces both delays and costs while fostering "cooperative judicial federalism."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 46 (1997).

In *Waeschle v. Dragovic*, this Court certified a question to the Michigan Supreme Court because it acknowledged that the existence of a constitutionally protected property interest was a question of state law.  576 F.3d 539, 551 (6th Cir. 2009) ("Given our view that the Michigan courts are better suited to answer the unsettled state-law aspect of Waeschle's due process claim than we are, we will exercise our discretion to have the district court certify the above-stated issue to the Michigan Supreme Court.").

And the federal district courts have relied on this process on important questions of Michigan's jurisdiction.  In 2020, the federal district court for the Western District of Michigan certified the question regarding the constitutionality of Michigan's Emergency Powers of the

Governor Act (EPGA) under Michigan's constitution. *See Midwest Institute of Health v. Whitmer*, No. 1:20-cv-414, Order, dated June 16, 2020 (ECF No. 44). Certification resulted in the seminal decision declaring the EPGA unconstitutional. *See In re Certified Questions From United States Dist. Ct., W. Dist. of Michigan, S. Div.,* 958 N.W.2d 1, 6 (Mich. 2020) ("the EPGA . . . is an unlawful delegation of legislative power to the executive branch in violation of the Michigan Constitution. Accordingly, the executive orders issued by the Governor in response to the COVID-19 pandemic now lack any basis under Michigan law."). Notably, the decision was issued within four months of the request for certification, as the date of the Michigan Supreme Court's decision was October 2, 2020.

The issues presented here also provide significant challenges to Michigan law, namely: what property right exists, if any, after tax foreclosure if there is no public sale resulting in surplus; did the state law abrogate any common law property right; and if there is such a property right, how it is measured. These questions merit the Michigan Supreme Court's review given their importance for the state and county

governments, and in light of the Michigan Supreme Court's decision in *Rafaeli*.

## III.   The Tax Injunction Act bars Plaintiffs' claims.

The Tax Injunction Act (TIA), 28 U.S.C. § 1341, bars claims challenging state tax collection laws in federal court.  It states that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The TIA curtails federal court authority to entertain challenges to tax liability computations, tax delinquency determinations, and subsequent state tax collection methods and procedures, including the forfeiture of real property to satisfy tax delinquencies.  Plaintiffs' questions are based on state property rights—what property right exists under Michigan law *after* tax foreclosure and state tax collection laws—including what *methods* of selling property to collect those taxes are permissible, consistent with the above state property rights.  These specific facts and statutory procedures have not been resolved by Michigan's courts in this context.  Beyond the principles of abstention or comity, the TIA dictates that state tax law disputes must be decided in

state courts, before any federal takings claims may be decided.  After all, "the [U.S.] Constitution protects rather than creates property interests," while "the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.' " *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)).

"The principal motivating force behind the [Tax Injunction] Act" was to ensure that federal courts were prohibited from "interfere[ing] with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat Bank*, 450 U.S. 503, 522 (1981).  "The TIA creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross v. Oakland Cnty. Treasurer*, 592 Fed. Appx. 380, 384 (6th Cir. 2014).

More recently, this Court held that the TIA did not preclude a suit from advancing in federal court where the plaintiff was challenging the refusal to refund excess proceeds from a tax foreclosure sale that resulted in additional monies beyond the tax obligation owed.  *Freed v*

*Thomas*, 976 F.3d 729 (6th Cir. 2020).  But the court's decision on remand turned on the Michigan Supreme Court's decision in *Rafaeli*, defining the underlying state property and tax laws.  And the present case is distinguishable from *Freed*.

To begin, here Plaintiffs have challenged the liability and delinquency of the tax assessments, as well as notice.  As the lower court indicated:

> Plaintiffs assert that '[m]ost of the Plaintiffs had entered into delinquent property installment agreements [with the County]' even though '[t]he Treasurer knew the Circuit Court had already entered a Judgment of foreclosure prior to entering the delinquent property tax payment plans with Plaintiffs . . . which purportedly prevented foreclosure.'

*Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at *3 (E.D. Mich. May 21, 2021).  None of those facts or claims were before the Court in *Freed*.

To the contrary, *Freed*'s suit followed from a public auction of his property for $42,000.00 after *Freed* failed to pay the forfeited tax amount by the redemption deadline under state law.  976 F.3d at 732. The *Freed* Court held that the TIA did not bar the case because "any sale proceeds in excess of [the taxes and fees owed] are not taxes or tax proceeds within the meaning of the TIA."  *Id*. at 735.  In other words, *Freed*'s suit was not barred by the TIA because it dealt with *non-tax*

23

funds realized by the government upon sale, but statutorily withheld by the foreclosing governmental unit; amounts left after the taxes and collection fees were satisfied were "not tax proceeds," and thus not subject to the TIA. *Id.* at 736.

More recently, in *Harrison v. Montgomery Cnty., Ohio*, No. 20-4051, 2021 WL 1881382 (6th Cir. May 11, 2021), this Court held that a litigant's case was sufficiently similar to *Freed* to avoid the TIA and comity: "*Harrison's* suit is a close analog [to the holding in *Freed*]. Because she challenges only Ohio's extinguishment of her surplus equity—not its foreclosure of tax-delinquent property—her use of § 1983 does not run afoul of comity principles," nor of the TIA. *Id.* at *6. Yet, in both instances, the Courts recognized that the litigants "did not 'seek to anticipatorily restrain collection of a state tax' and instead brought claims stemming from the State's '*post-collection* actions . . . .' " *Id.*, quoting *Freed*, 976 F.3d at 735.

In *Harrison*, there was no sale at all; "Montgomery County did not even collect the taxes owed by Harrison because it transferred clear title to her property to a land bank," with no mention of requiring a bid or

payment by the land bank sufficient to satisfy the taxes, fees, or collections costs.  *Id.*

Here, the challenge is not *post* collection (about proceeds after collection via sale, or the failure to sell at all) but about the statutory collection procedures themselves, which allow for disposition from the FGU to a governmental entity in exchange for paying the amounts owed.  Plaintiffs challenge the state tax law's collection mechanisms directly, seeking to vindicate an alleged property right appropriate for state courts to decide before any federal claim to enforce such rights (if they exist) is determined.

Here, there are no excess proceeds as the property was sold for the taxes, penalty, fees, and interest plus collections expenses owed by each property, according to state tax law.  *Freed'*s case was "about refund procedures, not collection procedures."  *Freed*, 976 F.3d at 735.  This case is about the validity of collection procedures, and whether those procedures violate any property right *that arises under state laws.*  As such, the TIA bars Plaintiffs' claims, or at least bars such federal claims in federal courts until such time as the state's courts have decided the predicate questions arising under state law.

25

## CONCLUSION AND RELIEF REQUESTED

The Michigan Department of Attorney General asks this Court to grant its motion to intervene; issue a new briefing schedule allowing for the State of Michigan to raise arguments defending the constitutionality of Mich. Comp. Laws § 211.78m, arguing that abstention is appropriate here until the state's courts have addressed the unsettled state law questions, arguing that the Tax Injunction Act bars this action, and reset this case for oral argument.

Alternatively, the Michigan Department of Attorney General respectfully requests that this Court remand the case to the District Court with instructions to certify the question(s) regarding the constitutionality of Mich. Comp. Laws § 211.78m to the Michigan Supreme Court.

Respectfully submitted,

*/s/ Matthew B. Hodges*
Matthew B. Hodges (P72193)
Assistant Attorney General
Attorney for Intervenor-Appellee
Michigan Dep't of Attorney General
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7584
Dated:  September 8, 2022            HodgesM@michigan.gov

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This motion complies with the type-volume limitation of
Federal Rule of Appellate Procedure 27(d)(2) because, excluding the
part of the document exempted by Federal Rule of Appellate Procedure
27(a)(2)(B), this brief contains no more than 5,200 words.  This
document contains 5,174 words.

2.     This document complies with the typeface requirements of
Federal Rule of Appellate Procedure 32(a)(5) and the type-style
requirements of Federal Rule of Appellate Procedure 32(a)(6) because
this document has been prepared in a proportionally spaced typeface
using Microsoft Word in 14-point Century Schoolbook.

/s/ Matthew B. Hodges
Matthew B. Hodges (P72193)
Assistant Attorney General
Attorney for Intervenor-Appellee
Michigan Dep't of Attorney General
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7584
HodgesM@michigan.gov

# CERTIFICATE OF SERVICE

I certify that on September 8, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

*/s/ Matthew B. Hodges*
Matthew B. Hodges (P72193)
Assistant Attorney General
Attorney for Intervenor-Appellee
Michigan Dep't of Attorney General
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7584
HodgesM@michigan.gov

# Exhibit

# 1

# Michigan Court of Appeals

DOCKETING STATEMENT

Case No:
Circuit: 2018-162877-NZ

Court of Appeals: 361397

**Please read before completing form.**

➤ MCR 7.204(H) and 7.205(E)(3) require an ***appellant*** in a civil action to complete and file a docketing statement within 28 days after the claim of appeal is filed or the application for leave to appeal is granted.  Failure to timely file this document may lead to dismissal of the appeal. An appellee may respond by filing a separate docketing statement.

➤ This document will be used to screen the appeal for suitability and eligibility for the settlement conference program, and will be used to help resolve jurisdictional and transcript issues.  It is important that you complete this form accurately and legibly.

➤ The issues identified in the docketing statement do not limit appellant's presentation of the issues in appellant's brief.  Omission of an issue in the docketing statement will not provide a basis for a motion to strike appellant's brief.

1.  Case Name:

☑ Appellant
☐ Appellee

Louis Jackson

v

Southfield Neighborhood Revitalization

☐ Appellant
☑ Appellee

Name of first Plaintiff

| Address: | 17245 Louise Street |
| | Southfield, MI 48075 |
| Telephone No: | |

Name of first Defendant

| Address: | 19785 W. 12 Mile Road, Ste. 404 |
| | Southfield, MI 48076 |
| Telephone No: | (248) 796-5000 |

| Attorney Name: | Jayson E. Blake | Bar No: 56128 |
| Address: | 3701 University Dr. Ste 200 | |
| | Auburn Hills, MI  48326 | |
| Telephone No: | (248) 373-3700 | |

| Attorney Name: | Matthew Nicols | Bar No: 78297 |
| Address: | 2915 Biddle Ave.,Ste.200 | |
| | Wyandotte, MI 48192 | |
| Telephone No: | (734) 281-7100 | |

2.  ☐  A bankruptcy or other proceeding has been filed which affects this Court's jurisdiction over this appeal.

> Identify and explain.

3.  ☑  There are pending or prior appeals in the Court of Appeals or Supreme Court which arose out of the same transaction, lower court case, or between the same parties.

> Specify case name, lower court number, appellate court number(s), and citation, if available.
> Jackson v. Southfield Neighbod Revitalization Initiative, 2018-162877-NZ, No. 334058 (Mich. Ct. App.) (Dec. 19, 2019); Jackson v. Southfield Neighborhood Revitalization Initiative, 953 N.W.2d 402, 403 (Mich. 2021)

4.  ☐  I am aware of the following pending appeals in the Court of Appeals or Supreme Court raising the same or closely related issues.

> Specify case name, lower court number, appellate court number(s), and citation, if available.

RECEIVED by MCOA 7/14/2022 3:03:59 PM

5. Identify **all** the lower court hearings.

| Type of proceeding (i.e. motion, trial, etc.) | Date(s) Occurred | Court Reporter |
|---|---|---|
| See Attachment A | | |
| | | |
| | | |

6. **Nature of case:**

   a. If the lower court case number provided on page 1 does not include a suffix, please specify the circuit court case code (i.e. NI, CK, etc): NZ_____.

   b. Identify the procedural nature of the case being appealed.
   ☐ arbitration          ☐ bench trial     ☐ post-judgment action     ☐ declaratory judgment
   ☐ interlocutory matter   ☐ jury trial    ☑ summary disposition
   ☐ administrative proceeding (specify agency) _____
   ☐ other (i.e. default judgment)_____

7. Briefly describe the nature of the action and the result in the trial court. Conclusory statements such as "the judgment of the trial court is not supported by law" are unacceptable. Attach additional pages as needed.

   The original action was for an unlawful taking under the Michigan Constitution and 5th Amendment of the U.S. Constitution, as well as unjust enrichment, due process, substantive due process, Civil RICO stemming from Defendants acquiring over 150 properties, including the named Defendants, under MCL 211.78m which was ruled unconstitutional by Rafaeli LLC v Oakland County by the Michigan S.Ct in 2020. Subsequently Michigan amended MCL 211.78m out of constitutional concerns and required a city when excercising the right of first refusal to pay fair market value. In February 2021, the Supreme Court remanded the case to the Oakland County Circuit Court in light of Rafaeli, which found government effects a taking when it fails to refund surplus proceeds from a tax sale to the former owner of the property. On remand, the trial court found again that Plaintiffs had no cognizable property and Rafaeli was prospective only. Also the lower court dismissed all other claims by failing to state a cause of action.

8. Briefly state the issues to be raised in this appeal. Attach additional pages as needed.

   1) Whether Rafaeli applies retroactively to this matter.
   2) Whether Plaintiffs' surplus value or equity is a cognizable property right.
   3) Whether the Plaintiffs have properly stated a claim for (i) improper taking under the Fifth and Fourteenth Amendents of the United States Constitution; (ii) inverse condemnation; (iii) violation of procedural due process; (iv) unjust enrichment; (v) civil conspiracy; and (vi) declaratory relief.

9. The amount and terms of the judgment appealed are:
   Dismissal of Plaintiffs' claims

10.    Postjudgment settlement negotiations. (Check all boxes that apply.)
   ☐ Postjudgment settlement negotiations have been conducted or are scheduled.
   ☑ Settlement is unlikely.
   ☐ Other _____

   7/14/20                                            /s/ Jayson E. Blake
   _____                          _____
   Date                                                Signature

   **Provide the Proof of Service on a separate form.**

2

RECEIVED by MCOA 7/14/2022 3:03:59 PM

# **ATTACHMENT A**

| Type of proceeding (ie motion, trial, etc.) | Date(s) Occurred | Court Reporter |
|---|---|---|
| Defense Motion Stay Discovery | 3/21/2018 | Ace Transcripts LLC |
| Defense Motion for Summary Disposition | 5/9/2018 | Ace Transcripts LLC |
| Motion for Leave to File Second Amended Complaint | 09/29/2021 | Ace Transcripts LLC |
| Defense Motion for Summary Disposition | 01/26/2022 | Ace Transcripts LLC |

RECEIVED by MCOA 7/14/2022 3:03:59 PM

# Exhibit

# 2

# Michigan Court of Appeals

Case No:
Circuit: 21-039727-CH

Court of Appeals: 362484

### DOCKETING STATEMENT

**Please read before completing form.**

➢ MCR 7.204(H) and 7.205(E)(3) require an ***appellant*** in a civil action to complete and file a docketing statement within 28 days after the claim of appeal is filed or the application for leave to appeal is granted.  Failure to timely file this document may lead to dismissal of the appeal.  An appellee may respond by filing a separate docketing statement.

➢ This document will be used to screen the appeal for suitability and eligibility for the settlement conference program, and will be used to help resolve jurisdictional and transcript issues.  It is important that you complete this form accurately and legibly.

➢ The issues identified in the docketing statement do not limit appellant's presentation of the issues in appellant's brief.  Omission of an issue in the docketing statement will not provide a basis for a motion to strike appellant's brief.

1. Case Name:

Mettler Walloon LLC ☑ Appellant
☐ Appellee

v

Charlevoix County Treasurer ☐ Appellant
☑ Appellee

| Name of first Plaintiff | Name of first Defendant |
|---|---|
| Address:<br><br>Telephone No: | Address:<br><br>Telephone No: |
| Attorney Name:  John R. Turner     Bar No: 38563<br>Address:  PO Box 2396<br>Petoskey, Michigan  49770<br>Telephone No:  (231) 348-4500 | Attorney Name:  Charles A. Lawler     Bar No: 65164<br>Address:  212 East Cesar Chavez Avenue<br>East Lansing, Michigan  48906<br>Telephone No: |

2. ☐  A bankruptcy or other proceeding has been filed which affects this Court's jurisdiction over this appeal.

Identify and explain.

3. ☐  There are pending or prior appeals in the Court of Appeals or Supreme Court which arose out of the same transaction, lower court case, or between the same parties.

Specify case name, lower court number, appellate court number(s), and citation, if available.

4. ☐  I am aware of the following pending appeals in the Court of Appeals or Supreme Court raising the same or closely related issues.

Specify case name, lower court number, appellate court number(s), and citation, if available.

RECEIVED by MCOA 8/11/2022 11:45:00 AM

5.  Identify **all** the lower court hearings.

| Type of proceeding (i.e. motion, trial, etc.) | Dates(s) Occurred | Court Reporter |
|---|---|---|
| Motion for Summary Disposition | May 31, 2022 | Michelle Davis |
|  |  |  |
|  |  |  |
|  |  |  |

6.  **Nature of case:**

   a.  If the lower court case number provided on page 1 does not include a suffix, please specify the circuit court case code (i.e. NI, CK, etc): _____.

   b.  Identify the procedural nature of the case being appealed.
   ☐arbitration        ☐ bench trial   ☐ post-judgment action      ☐declaratory judgment
   ☐ interlocutory matter   ☐ jury trial   ☑ summary disposition
   ☐administrative proceeding (specify agency) _____
   ☐other (i.e. default judgment)_____

7.  Briefly describe the nature of the action and the result in the trial court.  Conclusory statements such as "the judgment of the trial court is not supported by law" are unacceptable.  Attach additional pages as needed.

   Appellant owned property in Melrose Township.  The Charlevoix County Treasurer obtained title to this property because of the Appellant's failure to pay property taxes.  Melrose Township then purchased the property for the "minimum bid", which was approximately $9,000.  The fair market value of the property at that time as determined by the Melrose Township Assessor was approximately $190,000.  Appellant claimed in the lower court that the sale of the property for the "minimum bid" was a taking and that the proper remedy for the taking would be to require the sale of the property at a public auction.  Based on the Supreme Court's decision in Rafaeli, the lower court held that in the absence of "surplus proceeds" there was not a taking and granted summary disposition to the Appellees.

8.  Briefly state the issues to be raised in this appeal.  Attach additional pages as needed.

   Same issues.

9.  The amount and terms of the judgment appealed are:

10.    Postjudgment settlement negotiations.  (Check all boxes that apply.)
   ☐ Postjudgment settlement negotiations have been conducted or are scheduled.
   ☑ Settlement is unlikely.
   ☐ Other _____

   8/11/22
   _____
   Date

   John R. Turner  P38563
   _____
   Signature

   **Provide the Proof of Service on a separate form.**

2

RECEIVED by MCOA 8/11/2022 11:45:00 AM